STATE OF CONNECTICUT *v.* GERALD FULLWOOD
(11138)
(11139)

PETERS, HEALEY, PARSKEY, SHEA and DANNEHY, Js.

Argued October 2—decision released November 13, 1984

*Gilbert Shasha,* with whom, on the brief, was *Barry J. Ward,* for the appellant (defendant).

*C. Robert Satti,* state's attorney, with whom, on the brief, was *Michael L. Regan,* for the appellee (state).

PETERS, J. This is an appeal by the defendant Gerald Fullwood from his conviction, after a jury trial, on the charge of being a persistent dangerous felony offender under General Statutes § 53a-40 (a).[1] He raises a multitude of claims including various charges of prosecutorial misconduct and judicial bias. We find no error.

---

[1] General Statutes § 53a-40 provided in relevant part, in 1979: "Sec. 53a-40. PERSISTENT OFFENDERS: DEFINITIONS; DEFENSE; AUTHORIZED SENTENCES. (a) A persistent dangerous felony offender is a person who (1) stands convicted of manslaughter, arson, kidnapping, sexual assault in the first or third degree, sexual assault in the first or third degree with a firearm, robbery in the first or second degree, or assault in the first degree; and (2) has been, prior to the commission of the present crime, convicted of and imprisoned, under a sentence to a term of imprisonment of more than one year or of death, in this state or in any other state or in a federal correctional institution for any of the following crimes: (A) The crimes enumerated in subdivision (1), the crime of murder, or an attempt to commit any of said crimes or murder; or (B) prior to October 1, 1975, any of the crimes enumerated in sections 53a-72, 53a-75 or 53a-78 of the general statutes, revision of 1958, revised to 1975, or prior to October 1, 1971, in this state, assault with intent to kill under section 54-117, or any of the crimes enumerated in sections 53-9, 53-10, 53-11, 53-12 to 53-16, inclusive, 53-19, 53-21, 53-69, 53-78 to 53-80, inclusive, 53-82, 53-83, 53-86, 53-238 and 53-239 of the general statutes, revision of 1958, revised to 1968, or any predecessor statutes in this state, or an attempt to commit any of said

The underlying facts are as follows. The defendant was arrested in New London on December 16, 1978, on a charge of robbery in the first degree. He told the police that his name was John Williams. In that name, he was, on January 2, 1979, put to plea on an information charging him with the crime for which he had been arrested. He pleaded not guilty and elected a jury trial. At some time thereafter, the police learned that his true name was Gerald Fullwood and that he had been convicted of rape in New Haven County in 1970, and had been sentenced to a term of eight to fifteen years for that crime. The state's attorney then procured the indictment which is presently before us, charging the defendant as John Williams, aka Gerald Fullwood, in part I with the substantive offense of robbery in the first degree and in part II with being a persistent dangerous felony offender. Because the defendant, having been given notice of both parts of this indictment, elected to plead guilty to the first part, his appeal is limited to claims of error relating to his conviction, under the second part, of being a persistent dangerous felon.

The defendant, in his numerous assignments of error, has put into issue the trial court's denial of: (1) his motion for dismissal of the charge against him; (2) his motion for discovery; (3) his motion for recusal of the

---

crimes; or (C) in any other state, any crimes the essential elements of which are substantially the same as any of the crimes enumerated in subdivision (1) or (2). . . . (e) When any person has been found to be a persistent dangerous felony offender, and the court is of the opinion that his history and character and the nature and circumstances of his criminal conduct indicate that extended incarceration and lifetime supervision will best serve the public interest, the court, in lieu of imposing the sentence of imprisonment authorized by section 53a-35 for the crime of which such person presently stands convicted, may impose the sentence of imprisonment authorized by said section for a class A felony."

trial judge; (4) his motion for mistrial; and (5) his motions for acquittal and to set aside the verdict.[2] We find none of these claims persuasive.

## I

In the trial court, the defendant moved for dismissal of the charge against him on three grounds that he continues to press on his appeal: (1) the state's failure to comply with the requirements of Practice Book § 648 concerning the warning to be given a person accused of being a persistent dangerous felon; (2) the state's attorney's abuse of his prosecutorial discretion in selectively and discriminatorily prosecuting the defendant; and (3) the state's attorney's abuse of his prosecutorial discretion in vindictively prosecuting the defendant. We agree with the trial court that dismissal of the charge was not warranted.

The defendant maintains that he was not properly charged as a persistent dangerous felony offender, on part II of the indictment against him, because of the state's noncompliance with the procedural requirements of Practice Book § 648. In 1979, when the defendant was charged, § 648 specified that, before being put to plea on a two-part indictment, a defendant was to be notified by the clerk "in the absence of the judicial authority, of the contents of the second part" of the indictment, and the clerk was to "enter on the docket the time and place of the giving of such notification . . . ."[3] The defendant now acknowledges that the

---

[2] The defendant has withdrawn his related appeal, #11138, from the trial court's denial of his motion for extension of time to file an appeal.

[3] Practice Book § 648 provided, in 1979: "Prior to the time the defendant is put to plea pursuant to Sec. 647, the clerk shall notify the defendant, in the absence of the judicial authority, of the contents of the second part of the information. The clerk shall enter on the docket the time and place of the giving of such notification and, where necessary, shall include entry thereof in the judgment file."

clerk in fact gave him the required notification, but the state acknowledges that the clerk failed to docket the required entries. The question thus posed is whether the clerk's technical failure to comply with the docketing requirement of § 648 compelled dismissal of part II of the indictment. That question is answered in the negative by *State* v. *Couture,* 151 Conn. 213, 218, 196 A.2d 113 (1963), where we held that, if a defendant was properly warned, "[t]he failure to make proper entries on the docket and in the judgment file did not vitiate the conviction of the defendant under the second part of the information."

In his appeal from the denial of his motion for dismissal the defendant also claims that he was the victim of selective prosecution and, as an ancillary claim, that he was entitled, in his motion for discovery, to obtain the records of other felons who might have been charged with being persistent dangerous felony offenders. With respect to the discovery motion, the defendant concedes that this motion was denied without prejudice to its renewal at a later time, and was never renewed. In the absence of a final denial of the discovery motion, the propriety of the trial court's order is not reviewable. The defendant has cited no probative evidence in the record which would otherwise support his claim of discriminatory exercise of prosecutorial discretion. See *Oyler* v. *Boles,* 368 U.S. 448, 454–57, 82 S. Ct. 501, 7 L. Ed. 2d 446 (1962); *State* v. *Tedesco,* 175 Conn. 279, 289, 397 A.2d 1352 (1978); *State* v. *Daley,* 147 Conn. 506, 508–509, 163 A.2d 112, cert. denied, 364 U.S. 887, 81 S. Ct. 178, 5 L. Ed. 2d 107 (1960). This claim of error has therefore not been established.

The defendant claims finally that the motion to dismiss was erroneously denied because he was the victim of prosecutorial vindictiveness. The defendant alleges that the state's attorney sought to indict the defendant as a persistent dangerous felon to punish the defend-

ant for his election to seek a jury trial on the information charging him with robbery. We agree with the defendant that the exercise of his constitutional right to a jury trial may not be impaired by his reasonable apprehension "that the State will retaliate by substituting a more serious charge for the original one, thus subjecting him to a significantly increased potential period of incarceration." *Blackledge* v. *Perry,* 417 U.S. 21, 28, 94 S. Ct. 2098, 40 L. Ed. 2d 628 (1974); *North Carolina* v. *Pearce,* 395 U.S. 711, 724–25, 89 S. Ct. 2072, 23 L. Ed. 2d 656 (1969). We disagree, however, that the defendant has factually established prosecutorial vindictiveness in this case. The state could not have charged the defendant with being a persistent dangerous felon at the time of his original arrest, because his true identity, and his prior conviction, were not then known. The defendant does not allege that the state unreasonably or coercively delayed in procuring the indictment, once the relevant information became available. Consequently, the only basis for the defendant's claim is that the state lodged the more serious charge subsequent to the defendant's exercise of his constitutional rights with regard to the lesser charge on the information. This temporal sequence in and of itself is insufficient to establish either the fact or the reasonable apprehension of a causal connection. See *United States* v. *Goodwin,* 457 U.S. 368, 378–82, 102 S. Ct. 2485, 73 L. Ed. 2d 74 (1982). The claim of prosecutorial vindictiveness was therefore not proven, and the trial court did not err in denying the defendant's motion to dismiss the indictment on this ground.

## II

The defendant maintains that the trial judge erred in denying the defendant's motion for recusal. The defendant alleges that the trial judge, prior to the trial, made suggestions for a proposed disposition of the case and participated in pretrial discussions and negotia-

tions. Such conduct, the defendant charges, implicates Canon 3.C. (1) of the Code of Judicial Conduct, which states that: "[a] judge should disqualify himself in a proceeding in which his impartiality might reasonably be questioned . . . ."

The defendant cannot prevail on this claim of error because he has provided a record which fails to reveal the contents of the allegedly prejudicial negotiations in which the trial judge took part. In the trial court, defense counsel stated that he had "shared" with the defendant "some suggestions and recommendations which came from your Honor in connection with the proposed disposition of this case. I have the sense that having participated in this pretrial discussion and negotiation, that it is probably improper for the Court to remain in this case, and I respectfully call to the Court's attention, the fact that we have previewed this matter between Your Honor and myself, prior to going to Somers to discuss it with [the defendant] . . . ." It is not claimed that the state's attorney either participated in, or had knowledge of, what had transpired. The court responded to the motion for recusal by stating, "certainly, Mr. Shasha [defense counsel], you know the purpose of that prior discussion was to try to settle this matter and to resolve it. This is a Jury trial, and if judges are not to be allowed to enter into negotiations in an attempt to settle cases or dispose of cases, then I'm afraid we're in a lot of trouble. So, if you are objecting to that and asking me to disqualify myself, that Motion is denied."

Although this record raises the possibility of judicial misconduct, it does not establish with sufficient certainty what took place in chambers to require us to conclude that disqualification was clearly required. Evidently the trial judge improperly engaged in "ex parte . . . communications concerning a pending or

impending proceeding" in violation of Canon 3.A. (4)[4] of the Code of Judicial Conduct, when he conferred with defense counsel in the absence of the state's attorney. That conduct has, however, not been cited by the defendant in his motion for recusal, nor is it apparent that he would have had standing to do so. The more serious question is whether the trial court undertook an impermissible role when it tried "to settle this matter." If this statement indicates that the court actively participated in the negotiation of a plea bargain, disqualification would have been required. *State* v. *Gradzik*, 193 Conn. 35, 46–47, 475 A.2d 269 (1984). Although we have not adopted the federal rule flatly prohibiting trial judges from any participation in plea bargaining; Fed. R. Crim. Proc. § 11 (e) (1); our rules of practice expressly authorize the trial judge to do no more than to indicate whether a proposed agreed disposition may be accepted or rejected. Practice Book §§ 686–707, esp. §§ 694, 706.[5] Active involvement by trial judges in plea

---

[4] Canon 3.A. (4) of the Code of Judicial Conduct provides: "CANON 3. A JUDGE SHOULD PERFORM THE DUTIES OF HIS OFFICE IMPARTIALLY AND DILIGENTLY. The judicial duties of a judge take precedence over all his other activities. His judicial duties include all the duties of his office prescribed by law. In the performance of these duties, the following standards apply: A. Adjudicative Responsibilities. . . . (4) A judge should accord to every person who is legally interested in a proceeding, or his lawyer, full right to be heard according to law, and, except as authorized by law, neither initiate nor consider ex parte or other communications concerning a pending or impending proceeding. A judge, however, may obtain the advice of a disinterested expert on the law applicable to a proceeding before him if he gives notice to the parties of the person consulted and the substance of the advice, and affords the parties reasonable opportunity to respond."

[5] Practice Book §§ 694 and 706 provide: "SEC. 694. NOTICE OF PLEA AGREEMENT. If a plea agreement has been reached by the parties, which contemplates the entry of a plea of guilty or nolo contendere, the judicial authority shall require the disclosure of the agreement in open court or, on a showing of good cause, in camera at the time the plea is offered. Thereupon the judicial authority may accept or reject the agreement, or he may defer his decision on acceptance or rejection until there has been an opportunity to consider the presentence report, or he may defer it for other reasons."

"Sec. 706. NOTICE OF AGREEMENT. If the parties reach an agree-

negotiations has frequently been criticized. See *United States* v. *Adams,* 634 F.2d 830, 840–41 (5th Cir. 1981); *Frank* v. *Blackburn,* 646 F.2d 873, 880 (5th Cir. 1980), modified in part, 646 F.2d 902 (5th Cir. 1981), cert. denied, 454 U.S. 840, 102 S. Ct. 148, 70 L. Ed. 2d 123 (1981); Wright, Federal Practice and Procedure (Criminal) § 175.1, p. 639 (1982). We have, however, no way of knowing the extent to which the trial court in this case participated in plea discussions. Leaving aside the improper ex parte aspect of the judge's private consultation with defense counsel, which we do not condone, we cannot determine whether the judge indicated to defense counsel anything more than that he would be inclined to view favorably an agreed plea that might be negotiated between the defense and the prosecutor. The judge may only have urged defense counsel to consult with the defendant preparatory to plea negotiations between defense counsel and the prosecutor. The burden of establishing a record about whether there has been an impropriety rests with the party who claims that error has occurred. *State* v. *Heyward,* 152 Conn. 426, 429, 207 A.2d 730 (1965); *State* v. *Nash,* 149 Conn. 655, 658–59, 183 A.2d 275, cert. denied, 371 U.S. 868, 83 S. Ct. 130, 9 L. Ed. 2d 104 (1962); and see *Schwarzschild* v. *Martin,* 191 Conn. 316, 326, 464 A.2d 774 (1983). In the absence of such a record, we have no basis for concluding that the trial judge's pretrial activities so impaired, or appeared to impair, his ability to act as a judicial officer or a neutral arbiter that it was error to deny the motion for disqualification.

The defendant has equally failed to substantiate his related allegation that the trial judge's rulings on various pretrial and trial motions demonstrate actual bias.

ment which contemplates the entry of a plea of guilty or nolo contendere, they may advise the judicial authority in advance of the plea. The judicial authority may indicate whether he will concur in or reject the proposed disposition."

Adverse rulings do not themselves constitute evidence of bias. *Hartford Federal Savings & Loan Assn.* v. *Tucker*, 192 Conn. 1, 8, 469 A.2d 778 (1984). In fact one of the rulings of which the defendant complains, the denial of the motion for discovery, was made by a judge who was not the trial judge. This claim of error is groundless.[6]

## III

The defendant urges that the trial court erred in denying his motion for mistrial based upon allegedly prejudicial statements made by the state's attorney in his closing argument to the jury. Although the trial court sustained the defendant's objections to most of the statements now complained of, and gave a curative instruction, the defendant claims that the cumulative effect of what transpired deprived him of a fair trial.

The remarks at issue are justified by the state as rebuttal to statements made in the closing argument of defense counsel. The defendant's closing argument acknowledged that the defendant had voluntarily pleaded guilty to robbery, and that he had previously been convicted of rape, for which he had served four years in state prison. The question for the jury was, therefore, alleged to be: "[W]hat kind of a man is he? Is he a persistent dangerous felon from what you know

---

[6] The defendant has separately assigned as error the evidentiary rulings of the trial court that overruled the defendant's objection to the state's reference to the defendant as "Gerald Fullwood aka John Williams." The defendant appears to acknowledge that occasional use of the double name was warranted by the form of the indictment, which was similarly denominated. The appeal contests the state's "constant" or "continuous" use of both names. The defendant has, however, wholly failed to present this claim in the manner provided by Practice Book § 3060F (c) (3), which requires the brief to contain "references to the page or pages of the transcript." Accordingly, we decline to review this evidentiary claim. See *State* v. *DeForge*, 194 Conn. 392, 395–96 n.1, 480 A.2d 547 (1984); *State* v. *Vass*, 191 Conn. 604, 621, 469 A.2d 767 (1983).

from what the State has offered? . . . I'm saying if there is in your mind on the basis of your human experience, on the basis of your common sense knowledge, if there's some question arising out of the lack of evidence in this case as to whether or not this is what a persistent dangerous felon is, if there's some doubt, you have a duty to find him not guilty." The state's timely objection to this line of argument was overruled by the trial court.

In the ensuing state's closing argument, the following remarks were made. Attempting to explain the elements of "persistent" and "dangerous" as they relate to the charge of being a persistent dangerous felon, the state's attorney said "I think some of you may feel that an armed robbery is dangerous or a rape before whether it was of a girl under 16 or of a woman over 16 by force. Maybe that's not dangerous to you, maybe he should have three or four opportunities or convictions of rape . . . ." He continued, "I want to say to you right now, Mr. Shasha very well knows I can't tell you what kind of a man he is except to tell you he's the same man who raped a woman whether a child or not a child back in 1969 or '70." After the defendant's objection to such remarks was sustained, the state continued: "I will say to you only, what kind of man is he? He's the kind of a man who raped somebody prior to March 17, 1970, and was sentenced to eight to fifteen years in prison, and after four years he got out. December 16, 1978, he's got a loaded gun robbing a store here in New London." The defendant's objection that the state was going beyond the evidence, since there was no record of the defendant's having a loaded gun, was sustained. Finally, the state's attorney alluded to his own personal belief that the defendant was guilty, and referring to defense counsel, stated, "[h]e has agreed with me that this Defendant is guilty beyond a reasonable doubt."

The defendant then moved for a mistrial, which the court denied, indicating that it would give a curative charge in its instructions to the jury. In those instructions, the court first complimented both counsel for the manner in which they had tried the case and subsequently stated: "I asked the jury at times to disregard certain things that were said. I would point out to you that when the Court ordered matters erased from the record and asked you to disregard any statements that were made, and I refer to statements that were made concerning the child and so forth, those statements have nothing to do with the matter with which you are to deliberate. You should completely erase that from your mind." The defendant excepted to this instruction.

We have recently had occasion to review the test by which allegedly improper prosecutorial comment is to be measured. " 'The question before us on this appeal is not, primarily, whether the remarks in question were proper or improper, but it is whether the action of the trial court in refusing to grant a new trial on account of them, in the exercise of its discretion, so far exceeded or abused the discretion committed to it in a matter of this kind as to warrant us in granting a new trial.' *State* v. *Laudano,* 74 Conn. 638, 646, 51 A. 860 (1902)." *State* v. *Couture,* 194 Conn. 530, 562, 482 A.2d 300 (1984). This court, nonetheless, has supervisory power to vacate a judgment of conviction and to order a new trial to deter prosecutorial misconduct which, while not so egregious as to deprive the defendant of a fair trial, is " 'unduly "offensive to the maintenance of a sound judicial process." ' " *State* v. *Ubaldi,* 190 Conn. 559, 570, 462 A.2d 1001, cert. denied, 464 U.S. 916, 104 S. Ct. 280, 78 L. Ed. 2d 259 (1983); *State* v. *Binet,* 192 Conn. 618, 629, 473 A.2d 1200 (1984). This case, however, does not involve deliberate prosecutorial disregard of express judicial directions or established rules of fair play. Since there is thus no occasion for the exer-

cise of our supervisory powers, our ultimate task is to determine whether the defendant was deprived of his constitutional right to a fair trial, whether the remarks of the prosecutor were, in light of all of the facts and circumstances, so egregious that no curative instruction could reasonably be expected to remove their prejudicial impact. *State* v. *Couture,* supra, 562–63.

Applying that test to the case before us, we conclude that the trial court was not obligated to order a new trial for the defendant. It may well have been incorrect for the state's attorney to comment on what kind of a man the defendant was, but that argument was invited by the defense summation. *State* v. *Falcone,* 191 Conn. 12, 23, 463 A.2d 558 (1983). It was error to refer to a loaded gun, where there was no such evidence, but that remark was isolated and immediately corrected by the court. Furthermore, the motion for mistrial did not rely upon this remark, but rather emphasized the tone of voice in which the state's attorney addressed the jury.[7] In its totality, this record reveals neither a deliberate disregard of judicial rulings; *State* v. *Ubaldi,* supra, 574–75, nor deliberate remarks which were "facially improper, persistent and pronounced." *State* v. *Couture,* supra, 564. The prosecutorial overreaching in this case is not so egregious as to compel the entry of an order of mistrial.

---

[7] The defendant stated, in his oral motion for mistrial: "If Your Honor please, I think the record should note that during his closing argument Mr. Satti not only pounded on the table on a couple of occasions, I would say he fairly shouted to the jury when he said a point Your Honor has already ruled on that he's the kind of man who raped a child. At this point he pounded on the table and shouted, and the tenor of his remarks with regard to what kind of person the accused was with gestures and raising his voice as he did I think is inconsistent with the dispassionate administration of justice as is required by the prosecuting authority, and it was to such extreme, I submit to the Court, that as to inflame this jury with regard to Mr. Satti's passion in connection with this case; and I, therefore, move for a mistrial."

## IV

In his motions for acquittal and to set aside the verdict, the defendant unsuccessfully urged the trial court to hold that the state had failed to prove either of the two elements of the crime that General Statutes § 53a-40 (a) describes as the offense of being a persistent dangerous felon. The statute defines a persistent dangerous felony offender as "a person who (1) stands convicted of . . . robbery in the first or second degree . . . and (2) has been, prior to the commission of the present crime, convicted of and imprisoned . . . for any of the following crimes: . . . (B) . . . prior to October 1, 1971 . . . any of the crimes enumerated in . . . [section] 53-238 . . . ." The defendant's appeal claims that his plea of guilty to robbery does not establish that he "stands convicted" for the purposes of subsection (a) (1) of § 53a-40, and that his 1970 conviction of rape does not establish that he was convicted under § 53-238 for the purposes of subsection (a) (2) of § 53a-40. We do not agree.

The defendant argues that he does not "stand convicted" of the crime of robbery, despite his plea of guilty to that charge on the first part of the indictment against him. He maintains first, that as a matter of law, a plea of guilty does not constitute a conviction, because there can be no conviction until there has been a final judgment after the imposition of a sentence. He maintains, furthermore, that as an evidentiary matter, the state did not adduce proper proof of his plea of guilt.

The question of law raised by the defendant relies on our holding in *State* v. *Couture,* 151 Conn. 213, 219, 196 A.2d 113 (1963), that "[t]o prove a conviction, it is necessary to show it by the record of a valid, subsisting final judgment." The conviction which was at issue in that case was not however a conviction under

the first part of a two-part indictment but rather a prior conviction under an entirely separate information. In that case, there was no logical impediment to presentation of the formal record of sentence and judgment which is the hallmark of the ordinary criminal judgment. In the case before us, such a record is an impossibility, because, by the very nature of the two-part indictment combining a charge of a substantive crime in the first part with a charge of being a persistent dangerous felon in the second part, no sentence can be imposed, nor judgment rendered, until both parts of the indictment have been adjudicated. A person accused of being a persistent dangerous felony offender is not charged with a crime separate from the substantive crime which forms the first part of the indictment against him. *State* v. *Sinclair,* 184 Conn. 215, 216, 439 A.2d 945 (1981); *State* v. *Perkins,* 169 Conn. 263, 264–65, 363 A.2d 141 (1975). The only function of the separate judicial proceeding on the defendant's status as a persistent dangerous felon is to permit an enhanced sentence for conviction of the underlying substantive crime. See General Statutes § 53a-40 (e);[8] *State* v. *Lewis,* 176 Conn. 270, 272, 407 A.2d 955 (1978); *State* v. *Perkins,* supra. In these circumstances, a reasonable interpretation of the language of § 53a-40 (a) is to hold that the requirement of "stands convicted" is satisfied by an authoritative finding as to the defendant's guilt. See *State* v. *Campbell,* 180 Conn. 557, 563–64, 429 A.2d 960 (1980). Judicial acceptance of a guilty plea suffices to establish the first element of the offense of being a persistent dangerous felon.

The related evidentiary objection to the state's showing that the defendant "stands convicted" of robbery is equally unpersuasive. The state sought to prove that the defendant had pled guilty by: (1) testimony by the

---

[8] The text of General Statutes § 53a-40 (e) is to be found at footnote 1, supra.

custodian of the original file relating to part one of the indictment that the file contained such a plea; (2) testimony by the assistant clerk at the time of the plea of guilty that the plea had been made and accepted by the trial court; and (3) introduction, as an exhibit, of the official transcript of the proceedings when the defendant pleaded and was found guilty of the crime of robbery. In addition, the trial court, at the request of the state, took judicial notice of the fact that "John Williams also known as Gerald Fullwood pled guilty to the first part of the indictment in which the grand jurors charged that John Williams also known as Gerald B. Fullwood did commit the crime of robbery in the first degree on or about the 16th day of December, 1978, at the Court Drug Store, 12 Broad Street in the city of New London." Although at trial the defendant objected to the admissibility of much of this evidence, he has not raised any such issue on this appeal. We conclude that the state provided an ample evidentiary foundation for the jury's conclusion that the defendant "stands convicted" of the first part of the indictment.

The defendant's final claim is that the state failed to prove the second element of the crime charged by § 53a-40 (a), his prior conviction of a crime encompassed by General Statutes § 53-238.[9] The state produced, for this purpose, as *State* v. *Couture,* supra, requires, a certified copy of the judgment of March 17, 1970, sentencing the defendant upon his conviction for rape. Because the judgment did not contain the citation of the statute defining the crime of rape, the state had to establish that the rape conviction was a conviction

---

[9] General Statutes § 53-238 provided, in 1970: "Sec. 53-238. RAPE. Any person who commits the crime of rape upon any female shall be imprisoned in the State Prison not more than thirty years. Any person who carnally knows any female under the age of sixteen years shall be guilty of rape and shall be fined not more than one thousand dollars or imprisoned not more than thirty years or both. No female under the age of sixteen years shall be deemed capable of consenting to an act of intercourse."

for a violation of § 53-238. To fill this gap, the state introduced the official court file in the 1970 case, which showed that the information therein charged the defendant with rape in violation of § 53-238. In addition the trial court, at the state's request, took judicial notice of the fact that, in 1970, the applicable statutes "declared rape to be a crime in violation of Section 53-238 of said statutes." The defendant's objection to this record is apparently two-fold. On the one hand, he appears to be renewing the evidentiary objections that he raised at the trial; this claim, having been presented without compliance with the requirements of Practice Book § 3060F (c) (3), that the defendant include in his appeal brief the ground on which he objected at trial, need not be considered. On the other hand, he appears to be claiming that *State* v. *Couture,* supra, requires that the prior judgment contain all the necessary statutory information on its face; that claim we reject. Nothing in § 53a-40 (a) precludes the state from offering probative evidence to clarify an official judgment of conviction in order to prove that a defendant is a second offender within the reach of the statute.

There is no error.

In this opinion the other judges concurred.