# STATE OF CONNECTICUT *v.* JAMES HILTON
## (AC 22413)

Dranginis, Flynn and Bishop, Js.

Argued March 31—officially released September 2, 2003

*Frank P. Cannatelli*, for the appellant (defendant).

*Timothy J. Sugrue*, senior assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, and *James G. Clark*, senior assistant state's attorney, for the appellee (state).

*Opinion*

DRANGINIS, J. The defendant, James Hilton, appeals from the judgment of conviction, rendered after a jury trial, of murder in violation of General Statutes § 53a-54a (a),[1] carrying a pistol or revolver without a permit in violation of General Statutes § 29-35 (a)[2] and criminal possession of a pistol or revolver in violation of General Statutes § 53a-217c.[3] The sole issue on appeal is whether

[1] General Statutes § 53a-54a (a) provides: "A person is guilty of murder when, with intent to cause the death of another person, he causes the death of such person or of a third person or causes a suicide by force, duress or deception; except that in any prosecution under this subsection, it shall be an affirmative defense that the defendant committed the proscribed act or acts under the influence of extreme emotional disturbance for which there was a reasonable explanation or excuse, the reasonableness of which is to be determined from the viewpoint of a person in the defendant's situation under the circumstances as the defendant believed them to be, provided nothing contained in this subsection shall constitute a defense to a prosecution for, or preclude a conviction of, manslaughter in the first degree or any other crime."

[2] General Statutes § 29-35 (a) provides in relevant part: "No person shall carry any pistol or revolver upon one's person, except when such person is within the dwelling house or place of business of such person, without a permit to carry the same issued as provided in section 29-28. . . ."

[3] General Statutes § 53a-217c (a) provides: "A person is guilty of criminal possession of a pistol or revolver when such person possesses a pistol or revolver, as defined in section 29-27, and (1) has been convicted of a felony or of a violation of subsection (c) of section 21a-279, section 53a-58, 53a-61, 53a-61a, 53a-62, 53a-63, 53a-96, 53a-175, 53a-176, 53a-178 or 53a-181d, (2) has been convicted as delinquent for the commission of a serious juvenile offense, as defined in section 46b-120, (3) has been discharged from custody within the preceding twenty years after having been found not guilty of a crime by reason of mental disease or defect pursuant to section 53a-13, (4) has been confined in a hospital for persons with psychiatric disabilities, as defined in section 17a-495, within the preceding twelve months by order of a probate court, (5) knows that such person is subject to a restraining or protective order issued by a court, after notice and an opportunity to be heard has been provided to such person, in a case involving the use, attempted use or threatened use of physical force against another person, (6) knows that such person is subject to a firearms seizure order issued pursuant to subsection (d) of section 29-38c after notice and an opportunity to be heard has been provided to such person, or (7) is an alien illegally or unlawfully in the United States. For the purposes of this section, 'convicted' means having a judgment of conviction entered by a court of competent jurisdiction."

certain remarks made by the prosecutor during cross-examination of the defendant and in closing argument to the jury amounted to misconduct that denied the defendant a fair trial. We conclude that the defendant was not clearly deprived of a fair trial, and, therefore, affirm the judgment of the trial court.

The jury reasonably could have found the following facts. The victim, William Rodriguez, was shot on July 14, 2000, at approximately 9 p.m. in the area of Truman Street and King Place in New Haven. Sergeant Anthony Duff arrived at the scene of the shooting and discovered the victim's body on the sidewalk, surrounded by a crowd of people. An autopsy performed on the victim's body revealed that he died from a single gunshot at close range to the left side of his head. Bullet fragments removed during the victim's autopsy were tested and found to be consistent with having been fired from either a .38 special or a .357 magnum firearm. No gun was ever recovered.

The shooting was precipitated by a drug turf war. Anna Rodriguez, the victim's longtime friend, testified that two days before the murder, she and her boyfriend had gone to visit the victim, who had just moved to an apartment on Truman Street. Rodriguez testified that upon arriving outside the victim's apartment, her boyfriend sounded his car horn,[4] and the victim and his girlfriend, Cora Moore, came outside to visit them. At that point, the defendant suddenly approached on the passenger's side of the car and peered inside. When the defendant recognized Rodriquez' boyfriend, he walked away.

The jury also heard testimony from Sherice Mills, who stated that on the afternoon of the shooting, "Shawn," an associate of the victim, verbally confronted

---

[4] Evidence at trial established that individuals sound their car horn a few times to indicate that they want to buy marijuana.

the defendant and one of his associates regarding Shawn's drug dealing activities on Truman Street, which was part of the defendant's drug territory. During that conversation, Shawn threatened the defendant and his associate. The confrontation soon ended, and Shawn and the victim drove off in the victim's car.

Two women testified as eyewitnesses to the actual shooting. Mills testified that the victim left his porch to make a drug sale to someone in a car. She testified that moments later, while the victim was at the car, she heard the defendant state that he was "about to kill [the victim]," and observed the defendant walk across the street and shoot the victim in the head. According to Mills, the defendant fell to the ground with the victim, and the defendant "kept holding [the victim's] head, saying he didn't mean to do it and [telling] somebody to call the police." Mills later identified the defendant as the shooter from an array of photographs.

A second eyewitness, Simone Williams, who was on the porch at the time of the shooting, testified about essentially the same events as did Mills. Williams' testimony added that the defendant had approached the victim from behind and stated: "You ain't from around here, son," and, "You need to move from around here, son," and that she then saw the defendant take a gun from behind his back and shoot the victim. When the shooting stopped, Williams testified, the victim fell to the ground, and the defendant yelled for someone to call an ambulance. A short time later, the defendant fled the scene. Williams went to the police station sometime later and related to the police what she had observed concerning the shooting. At that time, she positively identified the defendant in a photographic array and did so again at trial.

The state also presented testimony from Moore, the victim's girlfriend, that while she was in Toisann Hen-

derson's second floor apartment on Truman Street play-
ing with Henderson's baby and listening to music, she
heard a gunshot. Minutes after the shooting, Henderson[5]
ran from the porch into the apartment and told Moore
that the defendant had shot her boyfriend. Moore ran
outside where she found the victim lying motionless
on the ground. She fell to the ground and started crying
and hugging him. Shortly thereafter, Duff arrived. On
the basis of the information that the witnesses provided,
Duff dispatched the defendant's description over the
police radio.

At trial, the defendant testified that after meeting
with his family, he voluntarily went to the police station,
accompanied by his brother-in-law, Sergeant Nate
Blackman, and provided a statement about the shoot-
ing. While he was in police custody, the defendant stated
that he had been sitting on his porch when he heard a
commotion and went to see what was happening. The
defendant further told the police that a third man had
drawn a gun, that the defendant had grappled for the
gun, and "it went bashing across [the victim's] head."
Later in the interview, the defendant was asked if he
could give more detail about the shooting. It was at
that point that the defendant ended the interview. At
trial, he described how several seconds after he fought
with the third man, a fourth man shot the victim and
ran away. Immediately after the gunshot, the defendant
testified, he applied pressure to the victim's wound to
stop the bleeding. He further testified that he left the
victim to make sure someone had called an ambulance.
When he returned and saw that the victim was receiving
aid, he went to and sat on the porch. The defendant
testified that he sat on the porch until people in the
crowd began to tell the police that he did the shooting.
He then stated that he became scared, and went directly
to see his children and then to Blackman's house.

---

[5] Henderson did not testify at trial.

During their investigation, the police learned that after the shooting, the defendant went to see his fiancee, Maybertha Ashley. She and her sister, Andrea Ashley, testified that the defendant had given his bloody clothes to his fiancee, who in turn gave them to Andrea Ashley to wash. When the police arrested the defendant at the police station, they took the clothing he had worn on the evening of the shooting. The blood samples and clothes collected from both the victim and the defendant were sent to the state forensic laboratory. A state's expert testified that a drop of blood found on the defendant's boxer shorts matched the victim's blood type and DNA. Despite the fact that the victim had been shot at fairly close range, there was no detectable blood on the defendant's other clothes. The defendant denied ever having his clothes washed after the shooting, and explained that his clothes were not covered in blood because he wore his shirt over his head and his pants around his knees.

On September 12, 2000, the defendant was charged with murder, and criminal possession of and carrying a pistol or revolver without a permit. Following a trial in July, 2001, the jury returned a verdict of guilty on all counts. On September 28, 2001, the court sentenced the defendant to a term of sixty years imprisonment on the charge of murder, a consecutive term of five years imprisonment on the charge of carrying a pistol without a permit and a concurrent term of five years imprisonment on the charge of criminal possession of a pistol or revolver for a total effective sentence of sixty-five years imprisonment. This appeal followed. Additional facts will be set forth as necessary.

The defendant claims that the prosecutor's questions and comments during cross-examination and closing argument constituted misconduct, thereby requiring a new trial. We disagree.

Because the defendant failed to raise any objection at trial, he concedes that he did not properly preserve his claim for review, but argues, nonetheless, that he is entitled to relief under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989),[6] or under the plain error doctrine. Practice Book § 60-5.[7] The claim is reviewable under *Golding* because the record is adequate to do so, and an allegation of prosecutorial misconduct is of constitutional magnitude. See *State* v. *Radzvilowicz*, 47 Conn. App. 1, 44, 703 A.2d 767, cert. denied, 243 Conn. 955, 704 A.2d 806 (1997). The defendant, however, cannot prevail under the third prong of *Golding* because he has failed to establish that a constitutional violation clearly exists and that it clearly deprived him of a fair trial.

We first set forth our standard of review for claims of prosecutorial misconduct. "To prove prosecutorial misconduct, the defendant must demonstrate substantial prejudice. . . . In order to demonstrate this, the defendant must establish that the trial as a whole was fundamentally unfair and that the misconduct so

---

[6] Pursuant to *Golding*, "a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Emphasis in original.) *State* v. *Golding*, supra, 213 Conn. 239–40. "In the absence of any one of these conditions, the defendant's claim will fail. The appellate tribunal is free, therefore, to respond to the defendant's claim by focusing on whichever condition is most relevant in the particular circumstances. . . . The first two questions relate to whether a defendant's claim is reviewable, and the last two relate to the substance of the actual review." (Citation omitted; internal quotation marks omitted.) *State* v. *Jordan*, 64 Conn. App. 143, 150, 781 A.2d 310 (2001).

[7] Practice Book § 60-5 provides in relevant part: "The court shall not be bound to consider a claim unless it was distinctly raised at the trial or arose subsequent to the trial. The court may in the interests of justice notice plain error not brought to the attention of the trial court. . . ."

infected the trial with unfairness as to make the conviction a denial of due process. . . . *State* v. *Singh*, 259 Conn. 693, [699–700], 793 A.2d 226 (2002).

"Prosecutorial misconduct may occur in the course of cross-examination of witnesses; *State* v. *Hafner*, 168 Conn. 230, 249, 362 A.2d 925, cert. denied, 423 U.S. 851, 96 S. Ct. 95, 46 L. Ed. 2d 74 (1975); and may be so clearly inflammatory as to be incapable of correction by action of the court. Id., 252–53. In such instances there is a reasonable possibility that the improprieties in the cross-examination either contributed to the jury's verdict of guilty or, negatively, foreclosed the jury from ever considering the possibility of acquittal. *State* v. *Williams*, 204 Conn. 523, 538–39, 529 A.2d 653 (1987).

"[P]rosecutorial misconduct of constitutional proportions may [also] arise during the course of closing argument, thereby implicating the fundamental fairness of the trial . . . . *State* v. *Singh*, supra, 259 Conn. 700, quoting *State* v. *Burton*, 258 Conn. 153, 165, 778 A.2d 955 (2001). Such argument may be, in light of all of the facts and circumstances, so egregious that no curative instruction could reasonably be expected to remove [its] prejudicial impact. *State* v. *Fullwood*, 194 Conn. 573, 585, 484 A.2d 435 (1984). *State* v. *Williams*, supra, 204 Conn. 539.

"In determining whether a defendant's right to a fair trial has been violated, [w]e do not focus alone . . . on the conduct of the prosecutor. The fairness of the trial and not the culpability of the prosecutor is the standard for analyzing the constitutional due process claims of criminal defendants alleging prosecutorial misconduct. *State* v. *Palmer*, 196 Conn. 157, 163, 491 A.2d 1075 (1985), quoting *State* v. *Ubaldi*, 190 Conn. 559, 562, 462 A.2d 1001, cert. denied, 464 U.S. 916, 104 S. Ct. 280, 78 L. Ed. 2d 259 (1983). . . . *State* v. *Wil-*

*liams*, supra, 204 Conn. 539–40. [T]he aim of due process is not punishment of society for the misdeeds of the prosecutor but avoidance of an unfair trial to the accused. . . . *Smith* v. *Phillips*, 455 U.S. 209, 219, 102 S. Ct. 940, 71 L. Ed. 2d 78 (1982).

"In determining whether prosecutorial misconduct was so serious as to amount to a denial of due process, [our Supreme Court], in conformity with courts in other jurisdictions, has focused on several factors. Among them are the extent to which the misconduct was invited by defense conduct or argument; *State* v. *Fullwood*, supra [194 Conn. 573]; *State* v. *Falcone*, 191 Conn. 12, 23, 463 A.2d 558 (1983); the severity of the misconduct; see *United States* v. *Modica*, 663 F.2d 1173, 1181 (2d Cir. 1981) [cert. denied, 456 U.S. 989, 102 S. Ct. 2269, 73 L. Ed. 2d 1284 (1982)]; the frequency of the misconduct; *State* v. *Couture*, [194 Conn. 530, 562–63, 482 A.2d 300 (1984), cert. denied, 469 U.S. 1192, 105 S. Ct. 967, 83 L. Ed. 2d 971 (1985)]; see *State* v. *Doehrer*, [200 Conn. 642, 654, 513 A.2d 58 (1986)]; *State* v. *Palmer*, supra, [196 Conn.] 163; the centrality of the misconduct to the critical issues in the case; *Hawthorne* v. *United States*, 476 A.2d 164, 172 (D.C. App. 1984); the strength of the curative measures adopted; *United States* v. *Modica*, supra [1181]; *Harris* v. *United States*, 402 F.2d 656, 657 n.1 (D.C. Cir. 1968); *State* v. *Doehrer*, supra [654]; and the strength of the state's case. See *United States* v. *Modica*, supra [1181]; *State* v. *Couture*, supra, 564; *State* v. *Glenn*, [194 Conn. 483, 492, 481 A.2d 741 (1984)]. *State* v. *Williams*, supra, 204 Conn. 540." (Internal quotation marks omitted.) *State* v. *Pereira*, 72 Conn. App. 545, 552–54, 805 A.2d 787 (2002), cert. denied, 262 Conn. 931, 815 A.2d 135 (2003).

Relying in part on *State* v. *Singh*, supra, 259 Conn. 699, the defendant argues that the prosecutor improperly (1) asked the defendant during cross-examination to comment on the veracity of other witnesses, (2)

expressed his personal opinion of the evidence and (3) appealed to the emotions, passions and prejudices of the jurors.[8]

In addressing the defendant's claim of prosecutorial misconduct, we apply a two part test. First, we examine each of the defendant's claims of prosecutorial misconduct in turn to determine whether they were indeed improper. Second, if an impropriety is found, we then look to see if the misconduct was so prejudicial as to deprive the defendant of a fair trial.

The defendant first argues that the prosecutor improperly asked him to characterize the testimony of two eyewitnesses and the medical examiner as untruthful. During the prosecutor's cross-examination of the defendant, the following colloquies took place:

"[The Prosecutor]: Yet, you've already told us that neither Sherice Mills nor Simone Williams has ever had any argument with you, correct?

"[The Defendant]: Correct.

"[The Prosecutor]: So, they have no reason to make up something that would make you into a murderer, correct?

"[The Defendant]: Correct.

* * *

"[The Prosecutor]: And so for your story to be true, the medical examiner's opinion, based upon 10,000 autopsies, has to be wrong, am I right?"

The defendant then stated that he did not understand the question. At that point, the court reporter read the question. The colloquy continued as follows:

---

[8] The defendant in his brief has failed to provide meaningful analysis of the third claim; therefore, we deem it abandoned. See *State* v. *Hanson*, 75 Conn. App. 140, 141 n.3, 815 A.2d 139 (2003).

"[The Prosecutor]: You agree with me that the opinion of the medical examiner is that this is a contact gunshot wound, right?

"[The Defendant]: Yes.

"[The Prosecutor]: And therefore, for your story to be true, the medical examiner's opinion has to be false, correct?

"[The Defendant]: No."

We agree with the defendant that the prosecutor's comments during cross-examination improperly compelled the defendant to comment on another witness' veracity.[9] Those comments are precisely what the *Singh* court warned against when it cautioned that such remarks invade the province of the jury and create the risk that the jury may conclude that to acquit the defendant, it must find that the other witnesses lied, because such questioning distorts the state's burden of proof. *State* v. *Singh*, supra, 259 Conn. 706–12.

As stated previously, however, when reviewing the prosecutor's remarks, the challenged conduct is not to be considered in a vacuum, but must be considered in the context and in the light of the trial as a whole. We reiterate that "[t]he ultimate question is [even if the conduct complained of is found to have been improper], whether the trial as a whole was fundamentally unfair and that the misconduct so infected the trial with unfairness as to make the conviction a denial of due process." (Internal quotation marks omitted.) *State* v. *Jenkins*, 70 Conn. App. 515, 542, 800 A.2d 1200, cert.

---

[9] Although the prosecutor might have been eliciting a comment on the reliability of the medical examiner's conclusions rather than on the medical examiner's veracity as a witness, the prosecutor should not have pursued that line of questioning. The defendant was not competent to comment on the medical examiner's conclusions, and it was improper to elicit a comment on the medical examiner's veracity. The defendant's opinion of an expert witness' conclusions simply are not relevant. See Conn. Code Evid. § 7-1.

denied, 261 Conn. 927, 806 A.2d 1062 (2002), quoting *State* v. *Singh,* supra, 259 Conn. 723. After applying the six factors previously outlined, we conclude that the prosecutor's comments did not rise to the level of misconduct that mandates a new trial. The challenged comments, although improper, were made only twice during the entire trial. They were not sufficiently severe or numerous to form a pattern of serious misconduct throughout the trial to deny the defendant his right to a fair trial. Accordingly, we conclude that the defendant has failed to demonstrate that the prosecutor's comments during cross-examination caused substantial prejudice.

The defendant also argues that the prosecutor's improper interjection of his opinion of the evidence during closing argument deprived the defendant of a fair trial. We agree that some of the prosecutor's remarks were improper, but after reviewing the evidence under the factors stated in *Singh,* we are not persuaded that the comments rose to the level of misconduct that would warrant reversal of the judgment.

The defendant cites to several of the prosecutor's comments in summation to the jury that improperly suggested that to find the defendant not guilty, the jury had to choose between believing the state's witnesses or the defendant. The defendant first argues that misconduct occurred when the prosecutor commented: "You'll notice that even in his argument, if the defendant's story is true, every other major witness in his case is lying or mistaken." The prosecutor also stated in rebuttal argument: "The fact of the matter is, if [the defendant] told you the truth, then everyone else lied to you, all the experts and all the civilians, and you don't believe that happened, and that's how easy it is for you to decide this case. Because if they didn't lie to you, which all the evidence purports that they did not, then he killed [the victim] and he intended to do so."

This court has stated on numerous occasions that prosecutors must be allowed generous latitude in argument, but that such latitude, although broad, is not limitless and must be balanced against the need to ensure that the defendant's rights are not compromised in the process. See *State* v. *Morgan*, 70 Conn. App. 255, 289, 797 A.2d 616, cert. denied, 261 Conn. 919, 806 A.2d 1056 (2002). Our Supreme Court recently stated in *State* v. *Singh*, supra, 259 Conn. 712, that making such remarks during summation is an improper form of argument. The state concedes on appeal, and we agree, that the prosecutor's remarks here clearly were improper. As stated previously, a determination that portions of the prosecutor's closing argument were inappropriate does not, however, end our analysis; we must also determine whether the prosecutor's comments were so serious as to cause the defendant substantial prejudice.

Our review of the record and the briefs reveals that the prosecutor's improper closing argument was invited by defense counsel. The prosecutor, in making the challenged statements during rebuttal argument, specifically was responding to defense counsel's comments concerning the defendant's testimony: "[It is] contrary to some of the other witnesses, as reliable or unreliable as they may have been to you . . . Is it contrary to what the state said? Sure. Is it contrary?" The prosecutor, referring to the defendant's closing argument, stated: "You'll notice that even in his argument, if the defendant's story is true, every other major witness in his case is lying or mistaken." Again, it is essential to consider the excerpted remarks in context. In *State* v. *Rogelstad*, 73 Conn. App. 17, 33, 806 A.2d 1089 (2002), we determined that the prosecutor's statement, although improper, did not require reversal of the judgment, as it was "in direct response" to comments by defense counsel during closing argument. We reach the same conclusion here, where the prosecutor's comment

was an invited response to defense counsel's attempt to vouch for the credibility of the defendant. Accordingly, we conclude that the prosecutor's two improper remarks were a fair response to defense counsel's similarly improper expression of his personal opinion about the defendant's credibility. We therefore hold that the remarks, viewed in the overall context, did not deprive the defendant of a fair trial and do not warrant overturning the conviction.

Furthermore, we note that although the prosecutor's improper comments were related to a critical issue in the case, namely, the credibility of the witnesses' identification of the defendant, on balance, the misconduct was not particularly severe and was limited to two brief statements during closing and rebuttal argument. Cf. *State* v. *Stevenson*, 70 Conn. App. 29, 797 A.2d 1, cert. granted, 261 Conn. 918, 806 A.2d 1057 (2002); *State* v. *Thompson*, 69 Conn. App. 299, 797 A.2d 539, cert. granted, 260 Conn. 936, 802 A.2d 90 (2002). Additionally, the evidence against the defendant was overwhelming. His conviction was predicated on not only the testimony of the two eyewitnesses, Mills and Williams, the defendant's fiancee and her sister, the investigating police officers, the medical examiner and forensic evidence of the victim's blood on the defendant's shorts, but also by the defendant's testimony.

Finally, although the defendant did not ask the court to give the jury curative instructions, the court gave the jury a clear and direct explanation of the law before deliberations began. The court specifically instructed the jury about the presumption of the defendant's innocence, the state's burden to prove guilt beyond a reasonable doubt, that statements and arguments of counsel are not evidence, and that it could convict or acquit the defendant based only on the evidence. In the absence of evidence to the contrary, we presume that the jury properly followed those instructions. See *State* v.

*Kirsch,* 263 Conn. 390, 416, 820 A.2d 236 (2003); *State* v. *Parrott,* 262 Conn. 276, 294, 811 A.2d 705 (2003). We therefore cannot conclude that the prosecutor crossed the boundaries of impropriety as to violate the defendant's right to a fair trial.

The defendant next takes issue with the prosecutor's comments during summation to the jury that several times characterized the defendant as a liar.[10] Where a prosecutor states in closing argument that a defendant lied while testifying, our courts have stated that prosecutors may not go so far as to express their personal opinion about a defendant's guilt, but they are allowed to draw any inference deducible from the facts in evidence. See *State* v. *Singh,* supra, 259 Conn. 710; *State* v. *Spyke,* 68 Conn. App. 97, 113, 792 A.2d 93, cert. denied, 261 Conn. 909, 804 A.2d 214 (2002). The prosecutor's comments here certainly were improper and not in any way consistent with the expectation of professionalism of his office. They were, however, limited and did not usurp the fact-finding role of the jury in light of all the evidence against the defendant.

A review of the record indicates that throughout that portion of his closing argument, the prosecutor confined his comments to facts supported by the evidence. The defendant claimed that another man had shot the victim, but several witnesses identified the defendant as the shooter. Thus, it was reasonable for the prosecutor to argue that the defendant's testimony was contrary to the testimony of other witnesses. Given the fact that the prosecutor coupled his substantially accurate characterization of the evidence with the suggestion that the jury closely examine the evidence for itself, we

---

[10] The defendant claims that the following portions of the prosecutor's closing argument were improper: "He has lied significantly about two things. . . . The defendant has the greatest motive to lie. . . . But what makes him, I think you'll conclude, a liar, is the story, the implausibility of it."

cannot say that his misconduct in the use of the word "liar" deprived the defendant of a fair trial.

Although we strongly disapprove of two remarks in the prosecutor's final argument, we fail to see how those comments alone rose to the level of egregious misconduct that so infected the trial with unfairness that the defendant was denied his constitutional right to a fair trial. Further, this case is not one of those truly exceptional situations that warrant plain error review. See *State* v. *Brown*, 73 Conn. App. 751, 756–57, 809 A.2d 546 (2002). Accordingly, we conclude that the defendant's claim fails under the third prong of *Golding*.

The judgment is affirmed.

In this opinion the other judges concurred.