JOE BURGOS VEGA *v.* COMMISSIONER OF
CORRECTION
(AC 27079)

Flynn, C. J., and Gruendel and Foti, Js.

Argued May 22—officially released September 11, 2007

*Annacarina Del Mastro*, senior assistant public defender, for the appellant (petitioner).

*Frederick W. Fawcett,* supervisory assistant state's attorney, with whom, on the brief, were *Jonathan C. Benedict,* state's attorney, and *Cornelius P. Kelly,* senior assistant state's attorney, for the appellee (respondent).

*Opinion*

PER CURIAM. The petitioner, Joe Burgos Vega, appeals from the judgment of the habeas court denying his petition for a writ of habeas corpus. He premises his appeal on the alleged ineffective assistance of trial counsel at his sentencing. We affirm the judgment of the habeas court.

The petitioner was charged and, following a jury trial, convicted of two counts of assault in the first degree in violation of General Statutes § 53a-59 and one count of kidnapping in the second degree in violation of General Statutes § 53a-94.[1] The trial court thereafter sentenced him to a total effective term of sixty years incarceration. The heinous facts underlying the petitioner's conviction are set forth in *State* v. *Vega,* 259 Conn. 374, 378–80, 788 A.2d 1221, cert. denied, 537 U.S. 836, 123 S. Ct. 152, 154 L. Ed. 2d 56 (2002), in which our Supreme Court affirmed the judgment of the trial court. On November 22, 2004, the petitioner filed an amended petition for a writ of habeas corpus that alleged ineffective assistance of trial counsel. By memorandum of decision filed August 1, 2005, the habeas court denied the petition for a writ of habeas corpus. The court subsequently granted the petitioner certification to appeal, and this appeal followed.

On appeal, the petitioner claims that he was denied effective assistance of counsel at his sentencing. In *Strickland* v. *Washington,* 466 U.S. 668, 104 S. Ct. 2052,

---

[1] The petitioner was acquitted on the charge of sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (1).

80 L. Ed. 2d 674 (1984), the United States Supreme Court articulated a two part analysis for evaluating constitutional claims of ineffective assistance of counsel. "First, the [petitioner] must show that counsel's performance was deficient. . . . Second, the [petitioner] must show that the deficient performance prejudiced the defense." Id., 687. A reviewing court need not "address both components of the inquiry if the [petitioner] makes an insufficient showing on one." Id., 697; *Johnson* v. *Commissioner of Correction*, 218 Conn. 403, 428–29, 589 A.2d 1214 (1991) (reviewing court can find against petitioner on either prong of *Strickland*). Regarding the prejudice prong, "[i]t is not enough for the [petitioner] to show that the errors [made by counsel] had some conceivable effect on the outcome of the proceeding. . . . Rather, [the petitioner] must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." (Internal quotation marks omitted.) *Lewis* v. *Commissioner of Correction*, 89 Conn. App. 850, 856, 877 A.2d 11, cert. denied, 275 Conn. 905, 882 A.2d 672 (2005). We conclude that the petitioner has not met that burden in the present case.

The petitioner's allegation of ineffective assistance centers on the assertion that his trial counsel did not present mitigating evidence at sentencing. Specifically, the petitioner refers to the psychiatric evaluation conducted subsequent to his incarceration by psychiatrist Charles Saldanah. Saldanah testified at the habeas trial that his diagnosis of the petitioner included alcohol dependency, depression and antisocial personality disorder characterized by behavior reflecting a "pattern of pervasive disregard for others." Saldanah also testified that the petitioner was sexually assaulted as a child. Finally, Saldanah stated that the petitioner as a child was exposed to violence in his neighborhood and severe

physical abuse in his home, although the petitioner's mother and stepfather testified otherwise.

The petitioner argues that, had trial counsel presented that mitigating evidence at sentencing, the sentence would have been different. We disagree. As the habeas court stated in its memorandum of decision: "[F]ar from being evidence that was necessarily and foreseeably mitigating evidence . . . the psychiatric evaluation and testimony of . . . Saldanah as a whole is arguably more harmful than helpful to the petitioner. This is especially so if viewed from the perspective of a reasonable sentencing judge who would have had the opportunity to view the [victim's] scars and disfigurement, as well as the photographs of the injuries, all evidence to which this court was not privy. A sentencing judge would have also evaluated the presentation, demeanor and credibility of all of the witnesses, including the . . . victim and the petitioner. Here, the victim testified that the petitioner had carved his name, 'Joey,' on her chest, sliced the nipple off her breast and then forced her to eat it. Medical doctors testified that the petitioner left a hole the size of a silver dollar where her right nipple used to be. Refusing her pleas to go to the hospital and thus still bleeding profusely, the petitioner took her to a hotel, forced her to smoke crack with him and then had sex with her just before the police arrived and arrested him. While in the transcript, the record of this evidence reveals a brutality and cruelty that defies description, it undoubtedly cannot compare to the effect on the sentencing court of experiencing live testimony from the victim and other witnesses. . . .

"[E]ven if such a psychiatric evaluation were produced, yielding the diagnoses of the petitioner's alcohol dependency, depression and 'antisocial personality disorder,' such evidence could have reinforced a sentencing court's discretionary determination that the

maximum sentence was the correct one. . . . Saldanah noted that the petitioner's conduct included his criminal activity, manifesting a violation of social norms, his pattern of endangering the safety of others and himself, deceitfulness, history of aggressive and irritable behavior and most disturbing from the point of sentencing, his lack of remorse and failure to take any responsibility whatsoever for the crime for which he was convicted. . . . Given that the conduct for which the petitioner was convicted strikes this court as being in the extreme of those spectrum of behaviors encompassed by a diagnosis of antisocial personality disorder. . . . Saldanah's opinion that one is rarely cured of this disorder is one that is likely to warrant and reinforce, rather than mitigate, a severe sentence."

The petitioner has not demonstrated that, had his trial counsel presented the aforementioned evidence to the trial court, he would have received a lesser sentence. At sentencing, the trial court addressed the petitioner, stating: "What was just shocking to me was not just the brutality of the acts that were actually committed against the victim here, but once they were committed, you showed absolutely no mercy in even seeking the slightest amount of medical care or attention for her. How she didn't basically bleed to death from the terrible assault . . . is beyond me. Just looking at the scarring on her face and neck and head, she just must have bled profusely. Somehow she survived. . . . She will have not just the facial and neck scars, but as counsel already indicated, internal scars on her mind and body that will last her for the rest of her life and beyond. . . . It's almost impossible not to recall as you sentence somebody for this case to recall her physical appearance, recall those pictures, recall her testimony here. It just was a case of almost appalling barbarianism. I can't think of anything that rivals it that I have seen. I really can't, and I have tried to. And I have had some pretty

difficult matters either as a judge or as a prosecutor in my time period in this court and other courts. There is nothing that comes close to it or rivals it in brutality." The court continued: "[R]ight now, just between you and I, the only responsibility I have is to make sure that no one else is subjected by you to anything resembling this. And the only way I can do that is to give you the longest sentence that the law will allow . . . ."

In light of the foregoing, we conclude that the petitioner has failed to establish a reasonable probability that the sentence imposed would have been different if his trial counsel had presented the allegedly mitigating evidence. As the habeas court noted, that evidence likely would have reinforced the severity of the court's sentence.

The judgment is affirmed.