******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

JAMES HILTON *v.* COMMISSIONER
OF CORRECTION
(AC 36382)
(AC 36387)

Gruendel, Alvord and Mullins, Js.

*Argued April 13—officially released November 10, 2015*

(Appeal from Superior Court, judicial district of Tolland, Cobb, J.)

*David B. Rozwaski*, assigned counsel, for the appellant in AC 36382 and the appellee in AC 36387 (petitioner).

*Sarah Hanna*, assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, and *David Clifton*, assistant state's attorney, for the appellee in AC 36382 and the appellant in AC 36387 (respondent).

*Opinion*

MULLINS, J. In the appeal designated AC 36382, the petitioner, James Hilton, appeals from the judgment of the habeas court denying the claims presented in his petition for a writ of habeas corpus.[1] The petitioner claims that the court erred when it determined that he failed to establish that he received ineffective assistance from his criminal trial counsel (counsel). In the appeal designated AC 36387, the respondent, the Commissioner of Correction, appeals from the judgment of the habeas court granting a single aspect of the petition. The respondent contends that the court improperly determined that the petitioner received ineffective assistance of counsel with respect to his claim regarding sentence review. As a result of this determination, the habeas court reinstated the petitioner's right to apply for sentence review.

With respect to the petitioner's appeal, we affirm the judgment of the habeas court denying the petition for a writ of habeas corpus in AC 36382. As to the respondent's appeal, we conclude that the court erred by granting the petition for a writ of habeas corpus and reinstating the petitioner's right to apply for sentence review. Accordingly, we reverse the judgment of the habeas court in AC 36387. We will address each of these appeals separately in this opinion.

I

AC 36382

This court previously set forth the underlying facts relevant to the petitioner's appeal: "The victim, William Rodriguez, was shot on July 14, 2000, at approximately 9 p.m. in the area of Truman Street and King Place in New Haven. Sergeant Anthony Duff arrived at the scene of the shooting and discovered the victim's body on the sidewalk, surrounded by a crowd of people. An autopsy performed on the victim's body revealed that he died from a single gunshot at close range to the left side of his head. Bullet fragments removed during the victim's autopsy were tested and found to be consistent with having been fired from either a .38 special or a .357 magnum firearm. No gun was ever recovered.

"The shooting was precipitated by a drug turf war. Anna Rodriguez, the victim's longtime friend, testified that two days before the murder, she and her boyfriend had gone to visit the victim, who had just moved to an apartment on Truman Street. Rodriguez testified that upon arriving outside the victim's apartment, her boyfriend sounded his car horn, and the victim and his girlfriend, Cora Moore, came outside to visit them. At that point, the [petitioner] suddenly approached on the passenger's side of the car and peered inside. When the [petitioner] recognized Rodriquez' boyfriend, he walked away.

"The jury also heard testimony from Sherice Mills, who stated that on the afternoon of the shooting, 'Shawn,' an associate of the victim, verbally confronted the [petitioner] and one of his associates regarding Shawn's drug dealing activities on Truman Street, which was part of the [petitioner's] drug territory. During that conversation, Shawn threatened the [petitioner] and his associate. The confrontation soon ended, and Shawn and the victim drove off in the victim's car.

"Two women testified as eyewitnesses to the actual shooting. Mills testified that the victim left his porch to make a drug sale to someone in a car. She testified that moments later, while the victim was at the car, she heard the [petitioner] state that he was 'about to kill [the victim],' and observed the [petitioner] walk across the street and shoot the victim in the head. According to Mills, the [petitioner] fell to the ground with the victim, and the [petitioner] 'kept holding [the victim's] head, saying he didn't mean to do it and [telling] somebody to call the police.' Mills later identified the [petitioner] as the shooter from an array of photographs.

"A second eyewitness, Simone Williams, who was on the porch at the time of the shooting, testified about essentially the same events as did Mills. Williams' testimony added that the [petitioner] had approached the victim from behind and stated: 'You ain't from around here, son,' and, 'You need to move from around here, son,' and that she then saw the [petitioner] take a gun from behind his back and shoot the victim. When the shooting stopped, Williams testified, the victim fell to the ground, and the [petitioner] yelled for someone to call an ambulance. A short time later, the [petitioner] fled the scene. Williams went to the police station sometime later and related to the police what she had observed concerning the shooting. At that time, she positively identified the [petitioner] in a photographic array and did so again at trial.

"The state also presented testimony from Moore, the victim's girlfriend, that while she was in Toisann Henderson's second floor apartment on Truman Street playing with Henderson's baby and listening to music, she heard a gunshot. Minutes after the shooting, Henderson ran from the porch into the apartment and told Moore that the [petitioner] had shot her boyfriend. Moore ran outside where she found the victim lying motionless on the ground. She fell to the ground and started crying and hugging him. Shortly thereafter, Duff arrived. On the basis of the information that the witnesses provided, Duff dispatched the [petitioner's] description over the police radio.

"At trial, the [petitioner] testified that after meeting with his family, he voluntarily went to the police station, accompanied by his brother-in-law, Sergeant Nate Blackman, and provided a statement about the shoot-

ing. While he was in police custody, the [petitioner] stated that he had been sitting on his porch when he heard a commotion and went to see what was happening. The [petitioner] further told the police that a third man had drawn a gun, that the [petitioner] had grappled for the gun, and 'it went bashing across [the victim's] head.' Later in the interview, the [petitioner] was asked if he could give more detail about the shooting. It was at that point that the [petitioner] ended the interview. At trial, he described how several seconds after he fought with the third man, a fourth man shot the victim and ran away. Immediately after the gunshot, the [petitioner] testified, he applied pressure to the victim's wound to stop the bleeding. He further testified that he left the victim to make sure someone had called an ambulance. When he returned and saw that the victim was receiving aid, he went to and sat on the porch. The [petitioner] testified that he sat on the porch until people in the crowd began to tell the police that he did the shooting. He then stated that he became scared, and went directly to see his children and then to Blackman's house.

"During their investigation, the police learned that after the shooting, the [petitioner] went to see his fiancee, Maybertha Ashley. She and her sister, Andrea Ashley, testified that the [petitioner] had given his bloody clothes to his fiancee, who in turn gave them to Andrea Ashley to wash. When the police arrested the [petitioner] at the police station, they took the clothing he had worn on the evening of the shooting. The blood samples and clothes collected from both the victim and the [petitioner] were sent to the state forensic laboratory. A state's expert testified that a drop of blood found on the [petitioner's] boxer shorts matched the victim's blood type and DNA. Despite the fact that the victim had been shot at fairly close range, there was no detectable blood on the [petitioner's] other clothes. The [petitioner] denied ever having his clothes washed after the shooting, and explained that his clothes were not covered in blood because he wore his shirt over his head and his pants around his knees.

"On September 12, 2000, the [petitioner] was charged with murder, and criminal possession of and carrying a pistol or revolver without a permit. Following a trial in July, 2001, the jury returned a verdict of guilty on all counts. On September 28, 2001, the court sentenced the [petitioner] to a term of sixty years imprisonment on the charge of murder, a consecutive term of five years imprisonment on the charge of carrying a pistol without a permit and a concurrent term of five years imprisonment on the charge of criminal possession of a pistol or revolver for a total effective sentence of sixty-five years imprisonment." (Footnotes omitted.) *State* v. *Hilton*, 79 Conn. App. 155, 157–60, 829 A.2d 890 (2003). We affirmed the judgment of conviction on direct appeal. See id., 170.

Following his unsuccessful direct appeal, the petitioner commenced the present habeas action. In his third amended petition, dated December 19, 2011, he alleged, inter alia, that counsel had provided him with ineffective assistance. Specifically, as relates to AC 36382, he alleged that counsel was ineffective in failing to cross-examine witnesses properly, failing to present witnesses, failing to prepare the petitioner to testify and failing to present sentence mitigation evidence. Following a trial, the habeas court issued a memorandum of decision denying these claims.[2]

The petitioner claims that the court improperly concluded that he had received effective assistance of counsel during his criminal trial and at sentencing. Specifically, he argues that counsel provided ineffective assistance by failing to (1) secure sufficient information and properly cross-examine two of the state's witnesses, (2) present witnesses in support of his defense, (3) prepare the petitioner to testify and (4) present sentence mitigation evidence. We are not persuaded by any of the petitioner's arguments.

As an initial matter, we set forth our standard of review and the relevant legal principles with respect to a claim of ineffective assistance of counsel. "The habeas court is afforded broad discretion in making its factual findings, and those findings will not be disturbed unless they are clearly erroneous. . . . Historical facts constitute a recital of external events and the credibility of their narrators. . . . Accordingly, [t]he habeas judge, as the trier of facts, is the sole arbiter of the credibility of witnesses and the weight to be given to their testimony. . . . The application of the habeas court's factual findings to the pertinent legal standard, however, presents a mixed question of law and fact, which is subject to plenary review." (Internal quotation marks omitted.) *Mahon* v. *Commissioner of Correction*, 157 Conn. App. 246, 252, 116 A.3d 331, cert. denied, 317 Conn. 917, 117 A.3d 855 (2015); see also *Sanchez* v. *Commissioner of Correction*, 314 Conn. 585, 604, 103 A.3d 954 (2014).

"A habeas petitioner can prevail on a constitutional claim of ineffective assistance of counsel [only if he can] establish both (1) deficient performance, and (2) actual prejudice. . . . For ineffectiveness claims resulting from guilty verdicts, we apply the two-pronged standard set forth in *Strickland* v. *Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984) . . . . To satisfy the performance prong, the petitioner must show that counsel's representation fell below an objective standard of reasonableness. . . . A reviewing court must view counsel's conduct with a strong presumption that it falls within the wide range of reasonable professional assistance. . . . To satisfy the prejudice prong for ineffective assistance claims resulting from guilty verdicts, the petitioner must dem-

onstrate that there exists a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." (Internal quotation marks omitted.) *Johnson* v. *Commissioner of Correction*, 153 Conn. App. 848, 855, 104 A.3d 771 (2014), cert. denied, 315 Conn. 912, 106 A.3d 305 (2015). "The claim will succeed only if both prongs are satisfied. . . . Consequently, [i]t is well settled that [a] reviewing court can find against a petitioner on either ground, whichever is easier." (Citation omitted; internal quotation marks omitted.) *Sanchez* v. *Commissioner of Correction*, supra, 314 Conn. 606; *Haywood* v. *Commissioner of Correction*, 153 Conn. App. 651, 656, 105 A.3d 238 (same), cert. denied, 315 Conn. 908, 105 A.3d 236 (2014).

We also are mindful that "[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the [petitioner] must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. . . . [C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." (Internal quotation marks omitted.) *Antonio A.* v. *Commissioner of Correction*, 148 Conn. App. 825, 829–30, 87 A.3d 600, cert. denied, 312 Conn. 901, 91 A.3d 907 (2014). Guided by these principles, we turn to the petitioner's specific arguments.

A

The petitioner first argues that counsel failed to secure sufficient information and did not properly cross-examine two of the state's witnesses, namely, Arkady Katsnelson, the pathologist who performed the autopsy on the victim, and Mills, an eyewitness to the shooting. He contends that counsel's "failure to investigate and seek out additional witnesses whose testimony would have contradicted the state's witnesses or to utilize existing prior statements from various witnesses to cross-examine more effectively the state's witnesses, constituted deficient performance by trial counsel." We will consider each of these arguments in turn.

1

We first address the petitioner's argument regarding the investigation conducted by counsel.[3] In its memorandum of decision, the habeas court stated: "With respect to [the] claim of a deficient investigation . . . [counsel] hired an investigator and conducted an objec-

tively reasonable investigation by seeking out witnesses and viewing the scene. He also reviewed all discovery materials. The petitioner has not produced any evidence as to what specifically counsel failed to uncover through additional investigation. The reasonableness of an investigation must be evaluated not through hindsight but from the perspective of the attorney when he was conducting it. . . . The burden to demonstrate what benefit additional investigation would have revealed is on the petitioner. . . . *Norton* v. *Commissioner of Correction*, 132 Conn. App. 850, 858–59, 33 A.3d 819, cert. denied, 303 Conn. 936, 36 A.3d 695 (2012). The petitioner has failed to meet his burden as to this claim." (Internal quotation marks omitted.)

In his appellate brief, the petitioner likewise has failed to demonstrate the benefits of additional investigation by counsel. Aside from a vague and unsupported assertion that further investigation would have been beneficial, the petitioner's brief is devoid of any specifics regarding this argument. "It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones." (Internal quotation marks omitted.) *State* v. *Diaz*, 94 Conn. App. 582, 593, 893 A.2d 495, cert. denied, 280 Conn. 901, 907 A.2d 91 (2006). Having failed to demonstrate the benefit of additional investigation by counsel, the petitioner's argument must fail.

2

We now turn to the petitioner's contention that counsel provided ineffective assistance by insufficiently cross-examining Katsnelson. At the habeas trial, the petitioner argued that counsel was ineffective in his cross-examination of Katsnelson regarding the nature of the victim's fatal wound. In rejecting this claim, the habeas court noted that the scope and nature of the cross-examination of a witness is a matter of trial strategy and that the petitioner had "failed to overcome the strong presumption that [counsel's] examination tactics as to Mills and . . . Katsnelson constituted a reasonable trial strategy." The court further determined that the petitioner had failed to show prejudice with respect to counsel's performance as to these witnesses. We agree with the habeas court.

During the criminal trial, Katsnelson testified that the victim suffered a contact gunshot wound. During the habeas trial, the petitioner presented the expert testimony of Harold Wayne Carver II, the state's chief medical examiner, and Peter DeForest, who held a doctorate degree in forensic science, regarding Katsnelson's autopsy report and conclusions. After reviewing the autopsy report and photographs, Carver agreed with Katsnelson's testimony from the criminal trial that the victim suffered a contact gunshot wound.[4] DeForest opined that, based on his review of the evidence, it was

ambiguous as to whether the victim had suffered a contact gunshot wound. During cross-examination, he admitted that he could not conclude, to a reasonable degree of scientific certainty, that the victim had not sustained a contact gunshot wound.

We agree with the respondent and the habeas court that the petitioner failed to sustain his burden of establishing either deficient performance[5] or prejudice[6] with respect to the cross-examination of Katsnelson. As to the former, we have stated that "[a]n attorney's line of questioning on examination of a witness clearly is tactical in nature. [As such, this] court will not, in hindsight, second-guess counsel's trial strategy." (Internal quotation marks omitted.) *Antonio A.* v. *Commissioner of Correction*, supra, 148 Conn. App. 832; see also *Mitchell* v. *Commissioner of Correction*, 109 Conn. App. 758, 769–70, 953 A.2d 685 (after reviewing record from both criminal and habeas proceedings, Appellate Court agreed that examination of witnesses was exercise of sound trial strategy that would not be second-guessed), cert. denied, 289 Conn. 950, 961 A.2d 417 (2008). In regard to the latter, given the other evidence and the inconclusive and indeterminate nature of DeForest's testimony, the petitioner failed to sustain his burden of establishing prejudice.

3

We next address the petitioner's argument that he suffered prejudice as a result of counsel's deficient performance in cross-examining Mills. The habeas court determined that the petitioner failed to overcome the strong presumption that the cross-examination of Mills constituted reasonable trial strategy or that it was prejudicial. The petitioner's claim of deficient performance with respect to the cross-examination of Mills is not clear from his appellate brief. What is evident is that he has failed to establish prejudice. The habeas court determined that there were other eyewitnesses who implicated the petitioner as the shooter of the victim, and, therefore, even if counsel had been deficient in his cross-examination of Mills, the petitioner could not demonstrate prejudice as a result thereof. As we noted on direct appeal, a second witness, Simone Williams, "testified about essentially the same events as did Mills." *State* v. *Hilton*, supra, 79 Conn. App. 158. We conclude, therefore, that this argument fails.

B

The petitioner next argues that counsel improperly failed to present two potential witnesses, Priscilla Simmons and DeForest, in support of his defense. Specifically, he contends that counsel should have called these potential witnesses at his criminal trial because Simmons would have stated that a third party was the shooter, and DeForest would have attacked the testimony and conclusions of Katsnelson. The respondent

counters that the habeas court properly concluded that counsel did not render deficient performance by failing to call either potential witness. We agree with the respondent.

1

At the habeas trial, Simmons testified that she witnessed a third person, Rasshaan Reed, shoot the victim in the morning of July 20, 2000.[7] She did not provide this information to the police. She also stated that she spoke with some investigators at some point, but not before 2001. She admitted that she knew the petitioner had been charged with shooting the victim, but did not tell anyone about Reed because she was scared.

The habeas court concluded that "[t]he petitioner produced no evidence that [counsel] had any knowledge of Simmons' version of the events. Although [counsel] hired an investigator who conducted an investigation, he did not locate Mills, which is understandable since it is clear that she did not want to be found or to be involved in any way." After citing the relevant case law, the court concluded: "The petitioner has produced no evidence that [counsel] knew, or could have known, about Simmons. Additionally, it is not evident that such testimony would have been deemed credible, as she testified that the events occurred in the morning, and the other witnesses and evidence established that the shooting occurred in the evening at around 9 p.m."

The petitioner failed to sustain his burden of establishing that counsel provided ineffective assistance by failing to call Simmons as a witness. "Defense counsel will be deemed ineffective only when it is shown that a defendant has informed his attorney of the existence of the witness and that the attorney, without a reasonable investigation and without adequate explanation, failed to call the witness at trial. The reasonableness of an investigation must be evaluated not through hindsight but from the perspective of the attorney when he was conducting it. . . . The burden to demonstrate what benefit additional investigation would have revealed is on the petitioner." (Citations omitted; internal quotation marks omitted.) *Norton* v. *Commissioner of Correction*, supra, 132 Conn. App. 858–59.

Here, there was no evidence presented at the habeas trial that counsel was aware, or should have been aware, of Simmons at the time of the criminal trial. We also agree with the conclusion of the habeas court that the petitioner failed to show that Simmons' testimony would have been helpful to his defense. See *Dunkley* v. *Commissioner of Correction*, 73 Conn. App. 819, 824, 810 A.2d 281 (2002) (failure to call potential defense witness does not constitute ineffective assistance without some showing that testimony would have been helpful in establishing defense), cert. denied, 262 Conn. 953,

818 A.2d 780 (2003). For these reasons, we conclude that the habeas court properly rejected this argument.

2

As noted previously, DeForest testified at the habeas trial and challenged the conclusions of Katsnelson regarding the nature of the gunshot wound suffered by the victim. The habeas court concluded that DeForest's testimony would not have been helpful in establishing that the petitioner did not shoot the victim. Katsnelson had testified at the criminal trial that the fatal wound was a contact gunshot wound. DeForest did not contradict this opinion, "but could only say that the evidence was ambiguous, and therefore he could not offer an opinion as to the type of wound, and therefore could not say that it was not a contact wound."

The habeas court concluded that "the petitioner has failed to prove that the testimony of . . . DeForest would have been helpful in establishing that the petitioner was not the shooter. At the criminal trial . . . Katsnelson opined that the wound to the victim's face was a contact gunshot wound. . . . DeForest did not contradict . . . Katsnelson's testimony but could only say that the evidence was ambiguous, and therefore he could not offer an opinion as to the type of wound, and therefore could not say that it was not a contact wound."

We agree with the analysis of the habeas court. As stated previously, the petitioner bears the burden of establishing that the testimony of DeForest would have been helpful to his defense. The testimony presented at the habeas trial from DeForest was insufficient to meet that standard.

C

The petitioner next argues that counsel improperly failed to prepare the petitioner to testify during the criminal trial. Specifically, he contends that counsel did not advise him properly as to which of his prior convictions he could acknowledge and counsel did not guide him as to the manner in which the prior convictions could be addressed during his testimony. The petitioner also maintains that counsel provided deficient performance by failing to file a motion to suppress references to his criminal history, his prison record and his prior sentences. The respondent counters that the habeas court properly determined that the petitioner failed to establish prejudice from these claimed deficiencies, given the strong evidence of guilt. We agree with the respondent.

In its memorandum of decision, the habeas court noted that the petitioner had exercised his right to testify at the criminal trial despite the contrary advice of counsel. During his direct examination, the petitioner had responded to questions regarding his arrests for possession of marijuana and his incarceration for a 1996 conviction. During cross-examination, the prosecutor

had pointed out that the petitioner had been convicted of the more serious offense of possession with intent to sell, and also asked the petitioner about other felony and illegal drug related convictions.

After reviewing this testimony, the habeas court concluded that the petitioner had failed to prove prejudice with respect to this claim of ineffective assistance of counsel because "[t]he state had strong evidence of the petitioner's guilt, including eyewitnesses who saw the petitioner shoot the victim and heard him make inculpatory statements, evidence of [the] petitioner's consciousness of guilt and forensic evidence." Specifically, the court explained that there was evidence that the petitioner, who had been threatened prior to the shooting, stated that he was about to kill the victim, two eyewitnesses observed the petitioner shoot the victim, the petitioner was overheard saying that he " 'didn't mean to do it' "; *State* v. *Hilton*, supra, 79 Conn. App. 158; one of the eyewitnesses told a third party that the petitioner had shot the victim, and the petitioner's testimony at the criminal trial was not credible given the forensic evidence and other eyewitnesses.

We agree with the habeas court and conclude that, even if counsel's performance was deficient for not sufficiently preparing the petitioner to testify, the petitioner failed to carry his burden of demonstrating that there is a reasonable probability that the outcome of the trial would have been different had he been more prepared, given the strong and overwhelming evidence presented by the state. See *Eastwood* v. *Commissioner of Correction*, 114 Conn. App. 471, 479, 969 A.2d 860, cert. denied, 292 Conn. 918, 973 A.2d 1275 (2009). Accordingly, the petitioner's claim that counsel rendered ineffective assistance by failing to prepare him to testify must fail.

D

The petitioner's final argument is that counsel improperly failed to present sentence mitigation evidence. Specifically, he contends that counsel "did not attempt to learn and know his client, did not seek out family members or additional information, which would have been helpful for mitigation purposes." The respondent counters that the habeas court properly determined that the petitioner had failed to demonstrate that counsel had provided ineffective assistance with respect to sentencing. We agree with the respondent.

At the habeas trial, counsel testified that he had met with the petitioner and discussed the presentence investigation report (report) with him. LaJeune Moore and Brenda Hilton, the petitioner's sisters, testified that they would have spoken at the sentencing and addressed the petitioner's positive attributes, including his relationships with his children.[8]

The habeas court noted that the report detailed the

petitioner's extensive criminal history that spanned over a decade and included multiple arrests for drug related offenses and crimes of violence. The report further indicated that the petitioner had spent a significant amount of time incarcerated. The court determined that additional statements from the petitioner's sisters would have been cumulative of the information set forth in the report, and thus were not likely to have changed the outcome of the sentencing. Specifically, the court stated: "Given the circumstances of the underlying crime, the petitioner's refusal to admit guilt and his extensive and serious criminal record, it is not reasonably probable that the trial court would have imposed a lesser sentence."

"Criminal defendants have a constitutional right to effective assistance of counsel during the sentencing stage. . . . To establish prejudice, [i]t is not enough for the [petitioner] to show that the errors had some conceivable effect on the outcome of the proceedings. . . . A claimant must demonstrate a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." (Citations omitted; internal quotation marks omitted.) *Davis* v. *Commissioner of Correction*, 147 Conn. App. 343, 360, 81 A.3d 1226 (2013), cert. granted on other grounds, 311 Conn. 921, 86 A.3d 467 (2014); see also *Vega* v. *Commissioner of Correction*, 103 Conn. App. 732, 733–37, 930 A.2d 75 (2007), cert. denied, 285 Conn. 906, 942 A.2d 416 (2008).

After a careful review of the record, we agree with the conclusion of the habeas court that even if the petitioner's sisters had testified at the sentencing, it is not reasonably probable that the petitioner would have received a lesser sentence. The petitioner had a significant criminal history, as documented in the report, and was convicted, inter alia, of murder following the testimony of multiple eyewitnesses. Under these facts and circumstances, we conclude that the habeas court properly rejected this argument.

Accordingly, with respect to the petitioner's appeal in AC 36382, we affirm the judgment of the habeas court denying the petition for a writ of habeas corpus.

II

In AC 36387, the respondent claims that the court incorrectly concluded that the petitioner's criminal trial counsel provided ineffective assistance in connection with the petitioner's right to sentence review. We conclude that the petitioner failed to provide any evidence that he wanted sentence review. Accordingly, even if counsel was deficient in his performance, the petitioner failed to establish that he was prejudiced by that deficient performance. We, therefore, reverse the judgment of the habeas court in AC 36387.[9]

The following facts are relevant to the respondent's

appeal. The petitioner was convicted of murder in violation of General Statutes § 53a-54a (a), carrying a pistol or revolver without a permit in violation of General Statutes § 29-35 (a), and criminal possession of a pistol or revolver in violation of General Statutes § 53a-217e, and he received a sentence of sixty-five years incarceration.[10] His conviction was upheld on appeal. *State* v. *Hilton*, supra, 79 Conn. App. 155. On December 20, 2011, the petitioner filed a third amended petition for a writ of habeas corpus. After a habeas trial, the court denied the petition in part; see part I of this opinion; but granted the petition in part on the ground that the petitioner's counsel had provided ineffective assistance by failing to file an application for sentence review on the petitioner's behalf. From that portion of the judgment, the respondent now appeals. We will set forth additional facts as they become necessary to our analysis.

On appeal, the respondent claims that the court incorrectly concluded that counsel had provided ineffective assistance in connection with the petitioner's right to sentence review. The respondent argues that counsel was not deficient in his performance and that, even if counsel was deficient, the petitioner failed to demonstrate prejudice because he provided no evidence that he wanted sentence review. We agree that the petitioner failed to present any evidence that he wanted counsel to file an application for sentence review on his behalf. Accordingly, the petitioner failed to establish that he suffered any prejudice as a result of counsel's alleged deficiencies in performance.

In his third amended petition, the petitioner alleged in relevant part that "counsel failed to perfect the petitioner's sentence review rights," and he requested that those rights be restored. In his return, the respondent denied that allegation. The habeas court found the following relevant facts in its memorandum of decision following the habeas trial: "At the habeas [trial], counsel testified that he left all posttrial filings, including sentence review, to the petitioner's appellate counsel because he believed that appellate counsel would be better able to handle those matters. [Counsel] believes he spoke to the petitioner after the verdict [at his criminal trial], gave him the sentence review forms, and explained that it would be best for appellate counsel to handle sentence review matters. [Appellate counsel] believed that [criminal trial counsel] would represent the petitioner at sentence review and file the application on the petitioner's behalf. However, neither [criminal trial counsel nor appellate counsel] filed the application within the thirty day statutory time period, and, as a result, the petitioner did not have his sentence reviewed."

The habeas court concluded that "because [counsel] represented the petitioner at sentencing, he was respon-

sible for representing him at sentence review, which representation necessarily includes advising him of his right and the risks and benefits of the sentence review procedure and filing the application.[11] Here, [counsel] left the critical task of filing the petitioner's application [for] sentence review to his appellate counsel, who also failed to pursue the application. The court, therefore, concludes that the petitioner has met his burden to prove that . . . counsel's [representation] was deficient." (Footnote added.)

The court then concluded that counsel's failure to pursue a sentence review application on behalf of the petitioner amounted to per se prejudice: "[P]rejudice is established by the absence of access to sentence review, resulting from [criminal] trial counsel's deficient performance." We disagree, however, with the habeas court's per se prejudice conclusion.

We reiterate our well established standard of review "of a habeas court's judgment on ineffective assistance of counsel claims . . . . In a habeas appeal, this court cannot disturb the underlying facts found by the habeas court unless they are clearly erroneous, but our review of whether the facts as found by the habeas court constituted a violation of the petitioner's constitutional right to effective assistance of counsel is plenary. . . . The habeas judge, as the trier of facts, is the sole arbiter of the credibility of witnesses and the weight to be given to their testimony." (Internal quotation marks omitted.) *Andrades* v. *Commissioner of Correction*, 108 Conn. App. 509, 511, 948 A.2d 365, cert. denied, 289 Conn. 906, 957 A.2d 868 (2008).

"In order to establish an ineffective assistance of counsel claim a petitioner must meet the two-pronged test enunciated in *Strickland* v. *Washington*, [supra, 466 U.S. 687]. Specifically, the claim must be supported by evidence establishing that (1) counsel's representation fell below an objective standard of reasonableness, and (2) counsel's deficient performance prejudiced the defense because there was a reasonable probability that the outcome of the proceedings would have been different had it not been for the deficient performance. . . . *Crocker* v. *Commissioner of Correction*, 126 Conn. App. 110, 116, 10 A.3d 1079, cert. denied, 300 Conn. 919, 14 A.3d 333 (2011). Because both prongs of *Strickland* must be demonstrated for the petitioner to prevail, failure to prove either prong is fatal to an ineffective assistance claim." (Emphasis omitted; internal quotation marks omitted.) *Jefferson* v. *Commissioner of Correction*, 144 Conn. App. 767, 772–73, 73 A.3d 840, cert. denied, 310 Conn. 929, 78 A.3d 856 (2013).

In this case, even if we assume deficient performance on the part of criminal trial counsel, the petitioner presented no evidence that he wanted counsel to file an application for sentence review. Accordingly, his claim fails under the second prong of *Strickland*.

In reaching its decision that counsel's actions, essentially, amounted to per se prejudice, the habeas court cited *James L.* v. *Commissioner of Correction*, 245 Conn. 132, 145, 712 A.2d 947 (1998), and *Andrades* v. *Commissioner of Correction*, supra, 108 Conn. App. 516. Those cases, however, are distinguishable from the present case.

In *James L.*, "[t]he commissioner [did] not contest the habeas court's conclusion that the petitioner was deprived of the effective assistance of counsel at the proper time for access to sentence review. The petitioner's counsel failed to engage him in a meaningful discussion of whether to apply for sentence review. Counsel also failed to file the application for sentence review within the statutory time period. The habeas court . . . noted that if, as in this case, a petitioner is deprived of sentence review because counsel failed to file the papers in a timely fashion, prejudice is established by the absence of access to sentence review." (Citation omitted.) *James L.* v. *Commissioner of Correction*, supra, 245 Conn. 145.

The issue of prejudice, however, was not litigated before our Supreme Court in *James L.* See id. Rather, the commissioner did not contest the conclusion of prejudice made by the habeas court. Id. On appeal, the issues before our Supreme Court related to successive petitions and whether the habeas court had the jurisdiction to restore a right that, by statute, was time limited. Id., 136. What we know from the decision is that the habeas court found that counsel did not engage the petitioner in a meaningful discussion of sentence review and that counsel did not file for sentence review. See id., 145. There is no indication whether the petitioner testified, providing evidence that he would have wanted to file for sentence review had counsel engaged him in a meaningful discussion. See id. Nevertheless, with the habeas court having found that counsel did not engage in a meaningful discussion with the petitioner regarding the right to sentence review, this *may have* amounted to structural error in that the petitioner was not made aware of his rights. In the present case, however, there was no finding that counsel did not engage in a meaningful conversation with the petitioner.

In *Andrades* v. *Commissioner of Correction*, supra, 108 Conn. App. 513–14, the petitioner testified at his habeas trial that his criminal trial counsel "had informed him that he would take care of the paperwork necessary to file the sentence review application. In a similar vein, [counsel] stated that it was his practice to file an application for sentence review on behalf of his clients when he filed a motion for a waiver of fees and costs to appeal. Although [counsel] testified as to his belief that he had applied for sentence review in the petitioner's case, he acknowledged that he did not have a copy of that application in his file, nor did he have any docu-

mentation reflecting that the application had been filed with the court. The petitioner stated that the sentence review division had not reviewed his sentence. Likewise, [counsel] testified that, although the sentence review division usually would contact him about a pending sentence review, he was never informed of a sentence review concerning the petitioner by the sentence review division . . . [and he] never inquired about the status of the petitioner's sentence review."

In concluding that the habeas court improperly had dismissed the petitioner's habeas petition, we explained that criminal trial counsel "had undertaken to ensure that the application for sentence review was filed properly on behalf of the petitioner, and this finding [was] supported by the evidence, namely, the testimony given by the petitioner and by [criminal trial counsel]." Id., 515. In reading the *Andrades* decision, it is clear that a reasonable inference can be made that during the petitioner's habeas testimony, he testified that he wanted counsel to file an application for sentence review and that counsel told him that it would be filed. See id., 513–16. Furthermore, counsel apparently verified this. See id.

The facts of the *Andrades* case readily are distinguishable from the present case. Here, the petitioner did not testify at his habeas trial, nor did he present any evidence that he wanted sentence review or that he was willing to take the risk of filing an application for sentence review.[12] Furthermore, the habeas court explained that counsel testified that he had discussed sentence review with the petitioner and gave him the necessary forms, although counsel also told the petitioner that appellate counsel should file all the posttrial filings.[13] The petitioner points to nothing in the record that establishes that he wanted sentence review during the thirty days after he was sentenced.

Additionally, during oral argument before this court, the petitioner's counsel admitted that there was nothing specific in the record to demonstrate that the petitioner wanted his sentence reviewed at that time, but that an inference could be made because the petitioner raised this as a claim in his habeas petition. He also argued that the petitioner did not have to prove prejudice because criminal trial counsel's failure to file an application for sentence review is per se prejudicial, even if a petitioner does not want his sentence reviewed. We disagree.

Although the petitioner in this case received a sentence that was only five years less than the total maximum sentence, and one could speculate that it is unlikely that he would not have wanted sentence review, the fact remains that he provided *no evidence* that he wanted counsel to file an application for sentence review or that he was willing to take the risk of getting an additional five years if an application was filed and the sentence ultimately was increased. We

simply cannot fill in this evidentiary gap with specula-
tion. With such evidence lacking from the record, we
conclude that the petitioner failed to meet his burden
of establishing prejudice.

Accordingly, with respect to the respondent's appeal
in AC 36387, we reverse the judgment of the habeas
court concluding that the petitioner's trial counsel pro-
vided ineffective assistance in failing to file an applica-
tion for sentence review.

In AC 36382, the judgment is affirmed. In AC 36387,
the judgment is reversed and the case is remanded with
direction to deny the petition and to render judgment
for the respondent.

In this opinion the other judges concurred.

[1] The habeas court granted the petition as it relates to the petitioner's claim
that criminal trial counsel was ineffective for failing to file an application for
sentence review. We will address this aspect of the petition in part II of
this opinion.

[2] The third amended petition also alleged that the petitioner had received
ineffective assistance of his appellate attorney, that he was actually innocent
of the crimes charged, and that the state had failed to provide him with
exculpatory information in violation of his due process rights under *Brady*
v. *Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963), the United
States constitution and the Connecticut constitution.

None of these claims are relevant to the present appeal because, at the
habeas trial, the petitioner withdrew his claim as to his appellate attorney
and he does not challenge the habeas court's denial of his actual innocence
and *Brady* claims.

[3] Our Supreme Court has discussed the duty to investigate as follows:
"Inasmuch as [c]onstitutionally adequate assistance of counsel includes
competent pretrial investigation . . . [e]ffective assistance of counsel
imposes an obligation [on] the attorney to investigate all surrounding circum-
stances of the case and to explore all avenues that may potentially lead to
facts relevant to the defense of the case. . . .

"Nevertheless, strategic choices made after thorough investigation of law
and facts relevant to plausible options are virtually unchallengeable; [but]
strategic choices made after less than complete investigation are reasonable
precisely to the extent that reasonable professional judgments support the
limitations on investigation. In other words, counsel has a duty to make
reasonable investigations or to make a reasonable decision that makes
particular investigations unnecessary. In any ineffectiveness case, a particu-
lar decision not to investigate must be directly assessed for reasonableness
in all the circumstances, applying a heavy measure of deference to coun-
sel's judgments.

"The reasonableness of counsel's actions may be determined or substan-
tially influenced by the [petitioner's] own statements or actions. Counsel's
actions are usually based, quite properly, on informed strategic choices
made by the [petitioner] and on information supplied by the [petitioner]. In
particular, what investigation decisions are reasonable depends critically
on such information. For example, when the facts that support a certain
potential line of defense are generally known to counsel because of what the
defendant has said, the need for further investigation may be considerably
diminished or eliminated altogether. And when a defendant has given counsel
reason to believe that pursuing certain investigations would be fruitless or
even harmful, counsel's failure to pursue those investigations may not later
be challenged as unreasonable." (Citations omitted; internal quotation marks
omitted.) *Gaines* v. *Commissioner of Correction*, 306 Conn. 664, 680–81,
51 A.3d 948 (2012).

[4] During cross-examination, Carver iterated his opinion that the victim
died as a result of a contact gunshot wound to the head.

[5] "To satisfy the performance prong . . . the petitioner must demonstrate
that his attorney's representation was not reasonably competent or within
the range of competence displayed by lawyers with ordinary training and
skill in the criminal law." (Internal quotation marks omitted.) *Antonio A.*
v. *Commissioner of Correction*, supra, 148 Conn. App. 829.

[6] "The second part of the *Strickland* analysis requires more than a showing that the errors made by counsel may have had some effect on the outcome of the proceeding. . . . Rather, [the petitioner] must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. . . . When a [petitioner] challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt. . . . Meeting this admittedly high standard is indeed a herculean task . . . . A court ruling on prejudice must consider the totality of the evidence before the judge or the jury. . . . Some errors will have had a pervasive effect on the inferences to be drawn from the evidence, altering the entire evidentiary picture, and some will have had an isolated, trivial effect. Moreover, a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support. . . . The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." (Citation omitted; internal quotation marks omitted.) *Roger B.* v. *Commissioner of Correction*, 157 Conn. App. 265, 281–82, 116 A.3d 343 (2015).

[7] The evidence at the criminal trial established that the shooting occurred on July 14, 2000, at approximately 9 p.m.

[8] The report contained a statement from one of his sisters that he "was always an honest person with a good heart."

[9] Following oral argument, we asked the parties to brief the following issue: "Whether the petitioner's claim that he was prejudiced by his trial counsel's failure to perfect the petitioner's right to sentence review should have been dismissed by the habeas court as nonjusticiable because the thirty day time limit set forth in General Statutes § 51-195 for filing an application for sentence review is not jurisdictional; see *James L.* v. *Commissioner of Correction*, 245 Conn. 132, 143–48, 712 A.2d 947 (1998); and the petitioner has not sought discretionary review by filing an untimely application for sentence review. See *Janulawicz* v. *Commissioner of Correction*, 310 Conn. 265, 77 A.3d 113 (2013)." After reviewing the parties' supplemental briefs, we are persuaded, on the basis of *James L.*, that the petitioner was not required to file a late petition for sentence review before filing his habeas petition.

[10] The petitioner was exposed to a total effective sentence of seventy years incarceration. See General Statutes § 53a-35a and General Statutes (Rev. to 1999) § 29-37.

[11] Practice Book § 43-23 provides: "It is the responsibility of the counsel of record at the time of sentencing to represent the defendant at the hearing before the sentence review division of the superior court, unless, for exceptional reasons, such counsel is excused by the division."

[12] General Statutes § 51-195 provides in relevant part: "Any person sentenced on one or more counts of an information to a term of imprisonment for which the total sentence of all such counts amounts to confinement for three years or more, may, within thirty days from the date such sentence was imposed . . . file with the clerk of the court . . . an application for review of the sentence by the review division. Upon imposition of sentence . . . the clerk shall give written notice to the person sentenced of his right to make such a request. Such notice shall include a statement that review of the sentence may result in decrease or increase of the term within the limits fixed by law. A form for making such application shall accompany the notice. . . ." See also *Eastwood* v. *Commissioner of Correction*, supra, 114 Conn. App. 484 (counsel not ineffective for failing to file application for sentence review because he had advised petitioner that if application filed, petitioner could receive increased sentence, and, following this consultation, petitioner opted not to pursue sentence review); *Valentin* v. *Commissioner of Correction*, 94 Conn. App. 751, 758, 895 A.2d 242 (2006) (counsel not ineffective for failing to file application or to advise petitioner meaningfully regarding sentence review where record demonstrated that court clerk advised petitioner of right to sentence review, petitioner received advice from counsel that risk of sentence review outweighed benefit, and petitioner voluntarily decided to forgo sentence review application); *Ramos* v. *Commissioner of Correction*, 67 Conn. App. 654, 667, 789 A.2d 502 (sentence review under § 51-195 involves risk of increased sentence; defense strategy might be to avoid such review), cert. denied, 260 Conn. 912, 746 A.2d 558 (2002).

[13] The transcript of the sentencing proceeding also reveals that the clerk of the court stated on the record: "Let the record reflect that I'm handing the [petitioner] a notice of a right to appeal judgment of conviction; applica-

tion for waiver of fees, costs and expenses; and appointment of counsel on appeal; notice of right to have sentence reviewed; application for review; inmate notice of application; and restoration of electoral privileges."